# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

B.E. TECHNOLOGY, L.L.C.,      )
                   )
     **Plaintiff,**         )
                   )     **Case No. 2:12-cv-02767 JPM tmp**
**v.**                       )
                   )     **JURY DEMAND**
AMAZON DIGITAL SERVICES, INC.,    )
                   )     **ORAL ARGUMENT REQUESTED**
     **Defendant.**       )
                   )
                   )
_____ )

## PLAINTIFF B.E. TECHNOLOGY L.L.C.'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated:  July 23, 2013

Richard M. Carter (TN B.P.R. #7285)
Adam C. Simpson (TN B.P.R. #24705)
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN 38119-4839
Telephone:  (901) 522-9000

Robert E. Freitas (CA Bar No. 80948)
Craig R. Kaufman (CA Bar No. 159458)
Daniel J. Weinberg (CA Bar No. 227159)
Qudus B. Olaniran (CA Bar No. 267838)
FREITAS TSENG & KAUFMAN LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA  94065
Telephone:  (650) 593-6300

Attorneys for Plaintiff
B.E. Technology, L.L.C.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     RELEVANT BACKGROUND ...................................................................... 2

    A.      B.E. Technology, L.L.C ...................................................................... 2

    B.      *B.E. v. Amazon* ................................................................................... 2

III.    THE CLAIMS AT ISSUE ARE VALID AND DEFINITE ............................ 3

    A.      Means-Plus-Function Claims Have Special Rules For Indefiniteness ................. 4

    B.      The Claims Are Not Means-Plus-Function Claims ............................... 5

        1.      Claims that do not use the term "means" are presumed not to be means-plus-function claims ....................................................... 5

        2.      Amazon has presented no evidence to rebut the presumption ................... 7

        3.      The asserted claims have sufficiently definite structure ............................ 9

    C.      The Patents Are Valid Because There Is Sufficient Structure Corresponding to Each Supposed Means-Plus-Function Limitation.................. 12

IV.     THE CLAIMS AT ISSUE SATISFY THE WRITTEN DESCRIPTION REQUIREMENT .......................................................................................... 16

V.      INDEFINITENESS AND WRITTERN DESCRIPTION ARE MATTERS OF PATENT VALIDITY AND SHOULD NOT BE RESOLVED ON A MOTION TO DISMISS ................................................................................................. 19

VI.     LOCAL RULE 7.2(D) REQUEST FOR ORAL ARGUMENT ..................... 20

VII.    CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affymetrix, Inc. v. Hyseq, Inc.*,
132 F. Supp. 2d 1212 (N.D. Cal. 2001) ...................................................................10

*Al-Site Corp. v. VSI Int'l, Inc.*,
174 F.3d 1308 (Fed. Cir. 1999).................................................................................6

*All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*,
309 F.3d 774 (Fed. Cir. 2002)....................................................................................3

*AllVoice Computing PLC v. Nuance Commc'ns., Inc.*,
504 F.3d 1236 (Fed. Cir. 2007)..................................................................................4

*Aloft Media, LLC v. Adobe Sys. Inc.*,
570 F. Supp. 2d 887 (E.D. Tex. 2008) .....................................................................10

*Amgen, Inc. v. Chugai Pharm. Co.*,
927 F.2d 1200 (Fed. Cir. 1991)..................................................................................3

*Apple, Inc. v. Samsung Elecs. Co.*,
877 F. Supp. 2d 838 (N.D. Cal. 2012) ...............................................................9, 11

*Ariad Pharms, Inc. v. Eli Lilly and Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (*en banc*) ............................................................17

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008).........................................................................11, 13

*Asentinel LLC v. Cass Info. Sys., Inc.*,
2012 WL 1097336 (W.D. Tenn. Mar. 30, 2012) .....................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................19

*Blackboard, Inc. v. Desire2Learn Inc.*,
574 F.3d 1371 (Fed. Cir. 2009).................................................................................13

*Boston Scientific Corp. v. Johnson & Johnson*,
647 F.3d 1353 (Fed. Cir. 2011).................................................................................18

*Buddle v. Harley-Davidson, Inc.*,
250 F.3d 1369 (Fed. Cir. 2001).................................................................................12

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)............................................................................3

*Deston Therapeutics LLC v. Trigen Labs. Inc.*,
    723 F. Supp. 2d 665 (D. Del. 2010)......................................................................12

*Falkner v. Inglis*,
    448 F.3d 1357 (Fed. Cir. 2006) *cert. denied* 127 S. Ct. 1151 (2007)...................18

*Finisar Corp. v. DirecTV Grp., Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008)........................................................................5, 13

*Flo Healthcare Solutions, LLC v. Kappos*,
    697 F.3d 1367 (Fed. Cir. 2012)............................................................................6

*Fonar Corp. v. Johnson & Johnson*,
    821 F.2d 627 (Fed. Cir. 1987)..............................................................................8

*In re Hayes Microprocessor Prods. Inc. Patent Litig.*,
    982 F.2d 1527 (Fed. Cir. 1992)..........................................................................18

*HTC Corp. v. IPCOM GMBH & Co., KG*,
    667 F.3d 1270 (Fed. Cir. 2012)......................................................................12, 14

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986) *cert denied* 480 U.S. 947 (1987).........................15

*Internet Media Corp. v. Hearst Newspapers, LLC*,
    2011 WL 2559556 (D. Del. June 28, 2011)....................................................19, 20

*Inventio AG, v. Thyseenkrupp Elevator Ams. Corp.*,
    649 F.3d 1350 (Fed. Cir. 2011)....................................................................5, 6, 10

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005)..........................................................................17

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005)............................................................................3

*JuxtaComm-Texas Software, LLC v. Axway, Inc.*,
    2011 WL 6102057 (E.D. Tex. Dec. 7, 2011)........................................................10

*Leader Techs., Inc. v. Facebook, Inc.*,
    692 F. Supp. 2d 425 (D. Del. 2010)......................................................................4

## TABLE OF AUTHORITIES
### (continued)

Page

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
382 F.3d 1354 (Fed. Cir. 2004)..................................................................6, 8

*Mass. Inst. Of Tech. v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006)........................................................................8

*Micro Motion, Inc. v. Krohn, Inc.*,
2011 WL 386837 (D. Mass. Feb. 3, 2011) .................................................6, 8

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)......................................................................12

*Nomura v. YouTube, LLC*,
2013 WL 503102 (N.D. Cal. Feb. 8, 2013) .....................................................8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ....................................................10

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008)......................................................................17

*Precision Energy Servs., Inc. v. ThruBit, LLC*,
2013 WL 1155250 (S.D. Tex. Mar. 19, 2013)..................................................6

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
2010 WL 4698576 .........................................................................................20

*SBJ IP Holdings 1, LLC v. Blockbuster Inc.*,
2011 WL 903194 (E.D. Tex. Mar. 15, 2011) .................................................10

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
859 F.2d 434 (6th Cir. 1988) .........................................................................19

*Spectra-Physics, Inc. v. Coherent, Inc.*,
827 F.2d 1524 (Fed. Cir. 1987).......................................................................17

*Stanacard, LLC v. Rebtel Networks, AB*,
680 F. Supp. 2d 483 (S.D.N.Y. 2010).............................................................10

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008)...............................................................14, 15

*Technology Innovations, LLC v. Amazon.com, Inc.*,
2012 WL 1441300 (D. Del. Apr. 25, 2012)....................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011)...............................................................................13

*United Carbon Co. v. Binney & Smith Co.*,
  317 U.S. 228 (1942)..................................................................................................3

*In re Vickers*,
  141 F.2d 522 (C.C.P.A. 1944) ................................................................................17

*WMS Gaming, Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999)................................................................................5

## STATUTES

35 U.S.C. § 101.............................................................................................................20

35 U.S.C. § 112, ¶ 1 ................................................................................................2, 17

35 U.S. C. §112, ¶ 2 ......................................................................................................3

35 U.S.C. § 112, ¶ 6 ............................................................................................. *passim*

## RULES

Rule 12(b)(6)...................................................................................................... *passim*

## I.     INTRODUCTION

Defendant Amazon Digital Services, Inc.'s ("Amazon") "motion to dismiss" is not a conventional Rule 12(b)(6) motion.  Rather than test the sufficiency of plaintiff B.E. Technology, L.L.C.'s ("B.E.") complaint, as motions to dismiss do, Amazon, before any substantive discovery has been taken, seeks a judgment that the United States patents at issue in this case are invalid.  Amazon's motion should be denied because it fails to establish by the required clear and convincing evidence that the asserted patent claims are indefinite or fail to satisfy the written description requirement.

Amazon's indefiniteness argument is premised on the assumption that the claims at issue are means-plus-function claims, whose disclosure is controlled by the rules and authority implementing 35 U.S.C. § 112, ¶ 6.  Indeed, the unstated theme of Amazon's motion is that all software patents should be treated as means-plus-function claims, subject to the enhanced disclosure rules of section 112, ¶ 6.  Amazon cites no authority for this radical position, and no Court has gone that far.

The asserted claims are not means-plus-function claims.  They do not use the magic word "means," and in the absence of that claim language, the Federal Circuit applies a strong presumption, neither properly acknowledged nor rebutted by Amazon, that the claims *are not* means-plus-function.  Moreover, as many cases explain, the asserted claims recite sufficient structure so that Amazon cannot overcome the presumption against means-plus-function treatment.  Because the claims are not means-plus-function claims, the special disclosure rules applicable to such claims do not apply to the patents-in-suit, and Amazon's argument should be rejected by the Court.

Amazon's fallback argument, which it calls the "possession rule," is that the claims are invalid because they do not satisfy the written description requirement found in 35 U.S.C. § 112,

¶ 1.  Compliance with the written description requirement is a question of fact, making it singularly ill-suited for resolution in the context of a motion to dismiss, particularly where, as here, Amazon has presented no evidence to sustain its burden of proving invalidity by clear and convincing evidence.

Moreover, the written descriptions of the asserted patents set forth in more than sufficient detail that the inventor possessed the inventions at the time the patent applications were filed. By arguing that an algorithm is required disclosure for all aspects of the inventions, Amazon attempts to engraft the requirements of Section 112, ¶ 6 into a Section 112, ¶ 1 analysis.  There is no support for extending the analysis in this manner and no requirement that an algorithm must be disclosed in the written description for well-known aspects of the invention to satisfy the written description requirement in a software implemented invention.  Amazon's premature motion for a finding of invalidity of the patents-in-suit should be denied.

## II.    RELEVANT BACKGROUND

### A.    B.E. Technology, L.L.C.

B.E. is a Delaware limited liability company, headquartered in Cordova, Tennessee.  B.E. is the assignee of United States Patents 6,141,010 (the "'010 patent") and 6,771,290 (the "'290 patent") (together, the "patents-in-suit").  B.E.'s chief executive officer, Martin David Hoyle, is the named inventor of the patents-in-suit.

### B.    *B.E. v. Amazon*

B.E. filed its original Complaint in this matter on September 7, 2012, and filed an Amended Complaint on September 20, 2012.  D.E. 1 & 9.  This is one of eighteen cases B.E. has filed in this Court for the infringement of the patents-in-suit and a related patent not asserted against Amazon.  The defendants in these cases include several of the world's most sophisticated technology companies.  Unlike the other 18 B.E. defendants that have answered B.E.'s

complaints, Amazon contends the Amended Complaint fails to state a claim upon which relief can be granted because the patents-in-suit are invalid.  D.E. 32-1, 43-1 at 2.

## III.  THE CLAIMS AT ISSUE ARE VALID AND DEFINITE.

The Patent Act requires claims to be definite.  35 U. S. C. §112, ¶ 2.  "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe."  *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)).

The definiteness requirement is satisfied when claims "clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise."  *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942).  A claim is indefinite if "it does not reasonably apprise those skilled in the art of its scope."  *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005); *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1217 (Fed. Cir. 1991) (same).  Claims should not be found indefinite unless "reasonable efforts at claim construction prove futile."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005).

Amazon contends that the patents-in-suit are invalid because they fail to satisfy the definiteness requirement.  Amazon's motion rests entirely on the proposition that the asserted claims are a special type of claims—referred to as means-plus-function claims—that invoke special rules on definiteness.  *See* D.E. 32-1 at 10-11.  Amazon's motion should be denied because (1) the claims presumptively are not means-plus-function claims, and Amazon has failed to meaningfully acknowledge, much less rebut, this strong presumption; and (2) even if the

patent claims could be considered means-plus-function claims, the specification discloses sufficient corresponding structure to make the claims definite.

### A.      Means-Plus-Function Claims Have Special Rules For Indefiniteness.

Patent drafters can choose from different strategies when drafting claims. Typically, claims are drafted using structural language, and the ordinary rules of claim construction and definiteness apply. However, the patent act provides a special type of claim format that permits a patent owner to express a claim element as a means or step for performing a certain function:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.[1] "Section 112, ¶ 6 applies only to 'purely functional limitations that do not provide the structure that performs the recited function.'" *Leader Techs., Inc. v. Facebook, Inc.*, 692 F. Supp. 2d 425, 432 (D. Del. 2010) (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006)).

Means-plus-function claims have special rules for definiteness. To be definite, a claim in means-plus-function format must explicitly disclose a structure corresponding to the claimed function, and must clearly link that structure to the claimed function. *AllVoice Computing PLC v. Nuance Commc'ns., Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007) ("[A] mean-plus function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim."). In the context of computer-implemented means-plus-function limitations, this requires disclosure of

---

[1] Section 112, paragraph 6 has been renumbered section 112(f) under the revisions to the Patent Act. For consistency with the cited case law and in order to avoid confusion, B.E. refers to this section under the former naming convention.

the specific algorithm used to perform the function.  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999).  The expression of the algorithm is not a prisoner of a specific formula, and can be expressed in text, a flow chart, or any number of ways.  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (explaining an algorithm may be expressed "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure").

These special rules apply only to means-plus-function claims and *do not* apply to claims that are not written in means-plus-function format.  *See Inventio AG, v. Thyseenkrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1356 (Fed. Cir. 2011) (explaining section 112, ¶ 6 applies "'only to purely functional limitations that do not provide the structure that performs the recited function.'") (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311 (Fed. Cir. 2005) (*en banc*)).  If the asserted claims are not written in means-plus-function form, it is wrong to hold the asserted patents up to the standard of patents drafted in means-plus-function form.

**B.  The Claims Are Not Means-Plus-Function Claims.**

**1.  Claims that do not use the term "means" are presumed not to be means-plus-function claims.**

The asserted claims are not means-plus-function claims, and thus, the special disclosure rules do not apply to them.  Traditionally, patentees that intended to invoke the provisions of section 112, ¶ 6, and subject themselves to the special rules, have utilized the term "means" in their claim language.  To give meaning to these choices, the Federal Circuit has established common sense rules embodied in the following presumptions which govern whether a term is a means-plus-function limitation:

> The guidelines are straightforward: the use of the word "means" creates a rebuttable presumption that the drafter intended to invoke § 112, ¶ 6, while failure to use the word "means" creates a

>     rebuttable presumption that the drafter did not intend the claims to
>     be governed by § 112, ¶ 6.

*Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1373 (Fed. Cir. 2012) (citing

*Personalized Media Commc'ns LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir.

1998)).  "[T]he presumption flowing from the absence of the term 'means' is a strong one that is

not readily overcome."  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358

(Fed. Cir. 2004); *Inventio*, 649 F.3d at 1356 (same); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d

1308, 1318 (Fed. Cir. 1999) (same).  "[T]he Federal Circuit has 'seldom held that a limitation not

using the term 'means' must be considered to be in means-plus-function,' [citation omitted], and

has insisted that 'the circumstances must be unusual to overcome the presumption.'"  *Micro*

*Motion, Inc. v. Krohn, Inc.*, 2011 WL 386837, *10 (D. Mass. Feb. 3, 2011) (quoting *Mass. Inst.*

*Of Tech. v. Abacus Software*, 462 F.3d 1344, 1356 (Fed. Cir. 2006)); *Precision Energy Servs.,*

*Inc. v. ThruBit, LLC*, 2013 WL 1155250, *6 (S.D. Tex. Mar. 19, 2013) ("'When the claim drafter

has not signaled his intent to invoke § 112, ¶ 6 by using the term means, [the Federal Circuit is]

unwilling to apply that provision without a showing that the limitation essentially is devoid of

anything that can be construed as structure.'") (quoting *Flo Healthcare Solutions*, 697 F.3d at

1374).

     The asserted claims of B.E.'s patents do not use the magic word "means" to define any of

the claim limitations.  Claim 2 of the '290 patent is representative, and states:

>     **2**. A computer-readable memory for use by a client computer in
>     conjunction with a server that is accessible by the client computer
>     via a network, the server storing a user profile and user library for
>     each of a number of different users, with the user library
>     containing one or more files and the user profile containing at least
>     one user link that provides a, link to one of the files in the user
>     library, the computer-readable memory comprising:
>
>     a non-volatile data storage device;

a program stored on said non-volatile data storage device in a computer-readable format;

said program being operable upon execution to display a graphical user interface comprising an application window having a number of user-selectable items displayed therein, wherein each of said items has associated with it a link to an information resource accessible via the network and wherein said program is operable upon execution and in response to selection by a user of one of said items to access the associated information resource over the network;

said program being operable upon execution to receive from server one of the user profiles and to display a user-selectable item for user links contained within the user profile, said program further being operable in response to selection by a user of one of the user links to access the file associated with the selected user link from the user library associated with the received user profile.

'290 Patent, Col. 39:1-40:11; '010 Patent, Col. 21:32-22:4 (not utilizing the term "means"). The absence of the term "means" in B.E.'s claims triggers the strong presumption that the claims are not means-plus-function claims. Amazon, therefore, bears the substantial burden to establish "unusual circumstances" to overcome the presumption in B.E.'s favor. It has not done so.

### 2. Amazon has presented no evidence to rebut the presumption.

Not surprisingly, Amazon buries this critical law governing the application of the § 112, ¶ 6 presumptions in a footnote and ultimately fails to mount a credible rebuttal of the presumption. *See* D.E. 32-1 at 11 n.2. Aside from Amazon's bald assertion that "program" or "program module" are, *ipso facto*, means-plus-function terms, Amazon fails to offer any evidence sufficient to carry its burden that the asserted claims should be construed as means-plus-function or indefinite. This is inadequate to carry its burden to prove invalidity by clear and convincing evidence.

To overcome the presumption that a claim that does not use the term "means" is not a means-plus-function claim, the party challenging must show that the "'claim term fails to recite

sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.'"  *Mass. Inst. Of Tech.*, 462 F.3d at 1353 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).  "In considering whether a claim term recites sufficient structure to avoid application of section 112, ¶ 6, we have not required the claim term to denote a specific structure.  Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."  *Lighting World*, 382 F.3d at 1359-60 (citing *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)).

Any rebuttal of the presumption requires a finding of how one of ordinary skill in the art would understand the claim.  *See Nomura v. YouTube, LLC*, 2013 WL 503102, *10 (N.D. Cal. Feb. 8, 2013) ("The question before the court essentially boils down to 'whether skilled artisans, after reading the patent, would conclude that a claim limitation is *so devoid of structure* that the drafter constructively engaged in means-plus-function claiming.'") (quoting *Inventio*, 649 F.3d at 1357) (emphasis in original); *Micro Motion*, 2011 WL 386837 at *10 ("[T]he [] patent does not use the magic word [means], and so to defeat this presumption, [defendant] must produce sufficient evidence that individuals skilled in the art would not understand the language of the claims as designating structure.").  Of course, this evidence typically includes expert testimony.  *See Lighting World*, 382 F.3d at 1358 ("The task of determining whether the limitation in question should be regarded as a means-plus-function limitation, like all claim construction issues, is a question of law for the court, even though it is a question on which evidence from experts may be relevant.") (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004)); *Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627, 631 (Fed. Cir. 1987)

("Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used."). But Amazon presents no such evidence.[2]

### 3.     The asserted claims have sufficiently definite structure.

Distilled to its essence, Amazon's fundamental argument is that any claim involving computers and software is inherently functional, and the rules governing means-plus-function claims should apply to any such claim. But no court has gone as far as Amazon would venture. To the contrary, courts have recognized that software terms can connote structure, and that software inventions are not inherently functional in a way that triggers the application of section 112 ¶ 6. It is well-established that "claims that require 'computer readable program code configured to cause a computer to . . .' have been found not to be means-plus-function claims." *See Apple, Inc. v. Samsung Elecs. Co.*, 877 F. Supp. 2d 838, 896-97 (N.D. Cal. 2012), *rev'd on other grounds* 695 F.3d 1370 (Fed. Cir. 2012) (citing *Versata Software, Inc. v. Sun Microsystems, Inc.*, 2008 WL 3914098, *13-14 (E.D. Tex. Aug. 19, 2008)). Some courts have treated claims describing "computer code" for performing a function in the same way as claims that describe "circuits" for performing a function:

> [A] claim that recites 'computer code' for performing a specific function is analogous to a claim that recites a "circuit" for performing a specific function. . . . The Federal Circuit held that the term "circuit" used in that context connotes sufficient structure to one of ordinary skill in the art. . . . Similarly, when the structure-connoting term 'computer code' is coupled with a description of the computer code's operation, as provided by the "wherein" clauses, sufficient structural meaning is conveyed to persons of ordinary skill in the art. The Court therefore finds that the "computer code" elements referenced by the "wherein" clauses recite sufficiently definite structure to avoid the ambit of § 112, ¶ 6.

---

[2] Amazon's failure to proffer evidence from one of ordinary skill in the art is symptomatic of the problems encountered by pursuing this motion as a Rule 12(b)(6) challenge. *See,* Section V, *infra*.

*Aloft Media, LLC v. Adobe Sys. Inc.*, 570 F. Supp. 2d 887, 897-98 (E.D. Tex. 2008) (citations

omitted); *see also JuxtaComm-Texas Software, LLC v. Axway, Inc.*, 2011 WL 6102057, *11-12

(E.D. Tex. Dec. 7, 2011) ("The recited code in these claims describes sufficient structure to

avoid the application of § 112, ¶ 6.  Executable code exists as a physical structure that is

embodied on a physical medium such as a memory storage device.").  Others courts have found

that the terms "computer code" or "module" are not generic terms, "but rather recite[] structure

that is understood by those of skill in the art to be a type of device for accomplishing [] stated

functions."  *Affymetrix, Inc. v. Hyseq, Inc.*, 132 F. Supp. 2d 1212, 1232 (N.D. Cal. 2001); *see*

*also Stanacard, LLC v. Rebtel Networks, AB*, 680 F. Supp. 2d 483, 498 (S.D.N.Y. 2010) ("[I]n

many communications and computer arts cases, courts have found that a 'module' is the actual

structure described in the specification which corresponds to the function claimed by means

language."); *SBJ IP Holdings 1, LLC v. Blockbuster Inc.*, 2011 WL 903194, *25 (E.D. Tex. Mar.

15, 2011) ("[C]laims [a]re not rendered means-plus-function claims simply by the inclusion of

the words 'computer code.'").

  The asserted claims recite sufficient structure to avoid the application of § 112, ¶ 6.

Claim 2 of the '290 patent recites a "computer readable memory comprising: a non-volatile data

storage device" and "a program stored on said non-volatile data storage device."  '290 Patent,

Col. 39:7-11.  The specification contains several definitions relevant to this inquiry that establish

that the term "program" means "computer readable code."  *See Inventio*, 649 F.3d at 1356-57

("[W]e allow an inventor to provide, in the written description, express definitions for terms that

appear in the claims, and those definitions govern the construction of the claims."); *Phillips v.*

*AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("[O]ur cases recognize that the specification

may reveal a special definition given to a claim term by the patentee that differs from the

meaning it would otherwise possess.  In such cases, the inventor's lexicography governs.").

Specifically, "program" is defined as "[o]ne or more program modules."  '290 Patent, Col. 4:62.

Next, "program module" is defined as "[o]ne or more related program components."  *Id.*, Col.

4:60-61.  Finally, "program component" is defined as "[a] set of instructions stored in a file in

***computer-readable format***, whether as ***object code*** or ***source code***, and whether written in a

compiled language, in byte code (such as Java^TM), or in a scripting or other interpreted

language."  *Id.*, Col. 4:55-59 (emphasis added).  The patentee clearly defined "program" to mean

"computer readable code," which, as the Northern District of California recognized in the much

watched *Apple v. Samsung* case, has been found not to be a means-plus-function limitation.  *See*

*Apple*, 877 F. Supp. 2d at 896-97.

The '010 patent shares a common specification with the '290 patent, and the limitation at

issue in Amazon's motion, "program modules," is similarly defined to mean "computer readable

code."  Amazon's contention that the term "program" in the '290 patent and "program modules"

in the '010 patent fail to connote sufficient structure and render the claims means-plus-function

is without merit.  As explained in the cases cited above, these terms are understood to connote

sufficient structure to avoid means-plus-function treatment.

Amazon relies on several cases to argue that computer hardware components "cannot

serve as the necessary structure for performing the functions of" computer implemented

inventions.  D.E. 32-1 at 9-10.  Those cases do not support Amazon's argument because all of

them apply a means-plus-function analysis—indeed, the claims at issue in those cases used the

term "means" in the claim, and the *parties agreed* that the limitations were means-plus-function

limitations.  *See Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331

(Fed. Cir. 2008) ("[T]he parties agreed the term 'control means' is a means-plus-function term

that invokes 35 U.S.C. § 112, ¶ 6."); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1305 (Fed. Cir.

2012) ("All of the asserted claims contain an 'access means' limitation.  The parties agree that

this is a means-plus-function limitation performed by a processor."); *HTC Corp. v. IPCOM*

*GMBH & Co., KG*, 667 F.3d 1270, 1278 (Fed. Cir. 2012) ("The parties agree that the term

'arrangement for re-activating' is a means-plus-function limitation."); *Asentinel LLC v. Cass*

*Info. Sys., Inc.*, 2012 WL 1097336, *3 (W.D. Tenn. Mar. 30, 2012) ("The parties agree that all of

the claims-at-issue include 'means-plus-function' limitations pursuant to 35 U.S.C. § 112 ¶ 6.").

So not only were the claims presumed to be means-plus-function claims, but the parties agreed

they were means-plus-function claims.  In contrast, B.E.'s claims are not drafted in means-plus-

function format, B.E. does not agree that they are means-plus-function claims, and the

corresponding disclosure rules do not apply.  Amazon's motion should be denied.

### C.    The Patents Are Valid Because There Is Sufficient Structure Corresponding to Each Supposed Means-Plus-Function Limitation.[3]

Even if the Court concludes that the asserted claims are means-plus-function limitations,

the patents are valid because there is sufficient structure disclosed in the claims and

specification.  Whether a specification adequately sets forth structure corresponding to a claimed

function is viewed from the perspective of one skilled in the art.  *See Buddle v. Harley-Davidson,*

*Inc.*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001) ("[A] challenge to a claim containing a means-

plus-function limitation as lacking structural support requires a finding, by clear and convincing

evidence, that the specification lacks disclosure of structure sufficient to be understood by one

---

[3] The fact that B.E., like Amazon, has not cited the file history or submitted a declaration from one of ordinary skill in the art means nothing because on motions to dismiss, the parties procedurally are limited to the complaint and matters incorporated therein.  *See Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 670-71 (D. Del. 2010) ("The fact that the parties in this case have obeyed the procedural rules constraining Rule 12(b)(6) motions does not mean that the record is sufficiently complete to warrant construing the patent claim contrary to Plaintiffs' allegations of infringement.").

skilled in the art as being adequate to perform the recited function."). Amazon presents no testimony from one of ordinary skill in the art to meet its burden, but there is ample evidence of sufficient structure in the patents' claims and specifications.

The Federal Circuit has explained that "[i]n cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, . . . the structure disclosed in the specification [must] be more than simply a general purpose computer or microprocessor." *Aristocrat*, 521 F.3d at 1333. "[S]imply disclosing a computer as the structure" is not sufficient to meet the requirements of 35 U.S.C. § 112, ¶ 6. *Id.* The Court further explained that the structure must not simply "describe the outcome" or function, but it must "describe the means for achieving that outcome." *Id.* at 1334. As a result, computer implemented means-plus-function claims require disclosure of an algorithm. *See Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009) ("[I]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.") (citing *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1386 (Fed. Cir. 2011) (means-plus-function software claims required disclosure of corresponding structure performing that function in the specification, but that structure did not need to be described in the form of software code).

An algorithm may be expressed in a variety of ways. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (explaining the specification can express an algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure"). Any doubts about the existence of a

sufficient algorithm, requires fact finding.  *See HTC Corp.*, 667 F.3d at 1282 (explaining that the

"the district court would have to conduct additional fact finding, and the parties potentially

would have to conduct additional expert discovery," in order to resolve questions about the

sufficiency of a disclosed algorithm).  In purporting to demonstrate by clear and convincing

evidence that no algorithm is disclosed in the specification and thereby invalidate the patents,

Amazon merely offers attorney argument.  Such argument, of course, is no substitute for

testimony from a qualified person of skill in the art.  *See Sundance, Inc. v. DeMonte Fabricating

Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) ("Unless a patent lawyer is also a qualified technical

expert, his testimony on [validity issues] is improper and thus inadmissible.").

        Even so, Amazon ignores that the patents carefully describe in detail how the software

works.  Claim 2 of the '290 patent and the specification include the very steps that the software

follows to perform the claimed functions.  *See* '290 Patent, Col. 39:12-40:2 ("[D]isplay a

graphical user interface comprising an application window having a number of user-selectable

items displayed therein, wherein each of said items has associated with it a link to an information

resource accessible via the network and wherein said program is operable upon execution and in

response to selection by a user of one of said items to access the associated information resource

over the network.").  The specification is not simply a description of the result or outcome but an

algorithm for how it works.  *Id*. Col. 5:50-58 ("Preferably, this is accomplished by storing a user

profile and user library on a server connected to the network.  Then, when a user runs the first

program module, it identifies the user and connects to the server to access that user's profile and

library, with the profile being used to specify that individual's user-selected links to be displayed

in the first region and the library being used to store these individual files and resources that the

user wishes to be able to access from anywhere on the network."); *see also id.* Col. 12:50-56

("This is accomplished using a user profile that is stored in the user database **46**.  The user profile is accessed by client software application **10** using a unique identifier for the user which, as will be described below, can be obtained via a login onto software application **10** or via a network or operating system login on the client computer **40**."); *id.* Col. 8:23-29 (disclosing receiving information from a server); *id.* Col. 20:14-19 ("It is this component that is used to access the Internet via TCP/IP and can be used with other communications protocols, such as RMI and COM.  The file I/O component **128** is used to manipulate stored files, including . . . user data storage **34**."); *id*. Fig. 4 (showing I/O module).

Amazon mostly takes aim at elements in the claims that are part of, but are not, the invention itself.  For example, Amazon contends that the '290 patent claims the function of "display[ing] a graphical user interface," D.E. 32-1 at 11, but does not describe "an algorithm for how these extant graphical user interfaces can be generated and displayed."  *Id*.  The invention disclosed in the '290 patent is not the "display of a graphical user interface," since graphical user interfaces were known in the art long before the patent was filed and thus need not be taught in the patent.  *See Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) *cert denied* 480 U.S. 947 (1987) ("[A] patent need not teach, and preferably omits, what is well known in the art.") (citation omitted).  However, with respect to the display of a graphical user interface, claim 2 discloses substantial information to teach the actual invention which includes the display of a graphical user interface.  The specification provides: "FIG. 5 which depicts a Windows$^{TM}$ version of the user interface provided by GUI module 52.  The user interface comprises application window 24 separated into a number of regions. . . .  These regions include a title bar 68, pull-down menu 70 (which identifies functions such a[s] edit, view, tools, users, etc.), a set (toolbar) of menu icons 72, a URL text field (74), a toolbar containing

application icons 76, . . . .  [T]he programming used to generate the display in these regions and to enable interactivity with the items displayed within these regions is well within the level of skill in the art."  '290 Patent, Col. 13:42-58.  Similarly, the specification provides that "[t]he user interface provided by GUI module 52 is implemented using a number of program components written in ActiveX$^{TM}$, Java$^{TM}$, or any other suitable programming language."  *Id*., Col. 17:49-53.  As explained above, "program component" is defined as "[a] set of instructions stored in a file in computer-readable format, whether as object code or source code, and whether written in a compiled language, in byte code (such as Java$^{TM}$), or in a scripting or other interpreted language."  *Id*., Col. 4:55-59.  To a person of ordinary skill in the art, the patent discloses sufficient structure corresponding to the "function" of displaying a graphical user interface, even though it need not teach that element.

The question in evaluating the disclosure of structure is "whether one of skill in the art would understand the specification itself to disclose structure, not simply whether that person would be capable of implementing that structure."  *Aristocrat*, 521 F.3d at 1336.  There is no "need for a disclosure of the specific program code if software were linked to the . . . function and one skilled in the art would know the kind of program to use."  *Id*. at 1337.  Here, the patents specifically state what programming is to be used and how the programming is to be implemented.  *See* '290 Patent, Col. 17:49-53 ("The user interface provided by GUI module 52 is implemented using a number of program components written in ActiveX$^{TM}$, Java$^{TM}$, or any other suitable programming language.").  Amazon's unsupported argument that the specification fails to disclose sufficient structure is without merit.

IV.     **THE CLAIMS AT ISSUE SATISFY THE WRITTEN DESCRIPTION REQUIREMENT.**

As a fall-back argument, Amazon contends that the patents-in-suit violate the "possession rule," D.E. 32-1 at 17, which is their renaming of the written description requirement provided by 35 U.S.C. §112, ¶ 1.  This argument is particularly ill-suited for resolution in a Rule 12(b)(6) motion, as compliance with the written description requirement is a question of fact.  *Ariad Pharms, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*) ("This inquiry, as we have long held, is a question of fact."); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).  To prevail on this defense, Amazon must show by clear and convincing evidence that the patent specification does not describe the invention in sufficient detail to allow one skilled in the art to reasonably conclude that the inventor was in possession of the claimed subject matter as of the filling date.  *Ariad Pharms.*, 598 F.3d at 1351.  Amazon has failed to meet its burden.

Amazon argues that the asserted patents violate the written description requirement because "the asserted patents fail to disclose any algorithms for performing any of the functions that the patents attempt to broadly claim and certainly do not show possession of 'any and all means' for achieving the claimed objectives."  D.E. 32-1 at 19.  This question of fact, unsupported by any evidence, is merely a re-hashing of Amazon's argument that the claims are indefinite under Section 112, ¶ 6.  Compliance with the written description requirement, however, does not require disclosure of every possible algorithm as Amazon contends.  To the contrary, the Federal Circuit has routinely held that patents containing a single embodiment provide adequate written description support for broad claims.  *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987); *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1073 (Fed. Cir. 2005); *In re Vickers*, 141 F.2d 522, 525 (C.C.P.A. 1944).

Moreover, B.E. has no obligation to provide details or algorithms directed to conventional, *i.e.*, non-inventive, functionality such as simply generating a GUI.  "A patent need not teach, and preferably omits, what is well known in the art."  *Falkner v. Inglis*, 448 F.3d 1357, 1365 (Fed. Cir. 2006) *cert. denied* 127 S. Ct. 1151 (2007) (quoting *Spectra-Physics*, 827 F.2d at 1534).  When "[o]ne skilled in the art would know how to program a microprocessor to perform the necessary steps *described in the specification*," the patentee has satisfied the written description requirement.  *In re Hayes Microprocessor Prods. Inc. Patent Litig.*, 982 F.2d 1527, 1534 (Fed. Cir. 1992) (emphasis in original); *see id.* ("Disclosing a microprocessor capable of performing certain functions is sufficient to satisfy the requirement of section 112, first paragraph, when one skilled in the relevant would understand what is intended and know how to carry it out."); *id.* ("We disagree with [the defendant's] contention that to satisfy section 112, a statement as to the specific function of a microprocessor is inadequate, that the actual program must be disclosed."); *see also Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011).

The specifications of the '290 and '010 patents clearly disclose the apparatus of the inventions, including the structure, the steps necessary to carry out the inventions, the functions of the apparatus, and the results that are possible.  Moreover, the patents disclose the programming languages to be employed in writing the program and the interactions between the various program modules.  Even if Amazon had attempted to prove invalidity for lack of written description, which it has not, there is more than an adequate written description in the patents-in-suit to establish that the patentee possessed the inventions at the time the patents were filed.

## V.   INDEFINITENESS AND WRITTERN DESCRIPTION ARE MATTERS OF VALIDITY AND SHOULD NOT BE RESOLVED ON A MOTION TO DISMISS.

"A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Amazon does not contend that it lacks sufficient notice of the allegations of infringement against it or that B.E. has failed to satisfy its pleading obligations under *Twombly* and *Iqbal*. Rather, Amazon challenges the validity of the patents-in-suit in a document it calls a motion to dismiss.  This is not Amazon's first attempt at such a strategy.  In *Technology Innovations, LLC v. Amazon.com, Inc.*, 2012 WL 1441300 (D. Del. Apr. 25, 2012), Amazon unsuccessfully moved to dismiss under Rule 12(b)(6) a complaint for patent infringement arguing that "one of ordinary skill in the art would [not] understand th[e] term [book] in the [asserted] patent" to include an Amazon "Kindle e-reader."  *Id*. at *2.  The Court rejected Amazon's arguments, explaining that it was "not prepared to engage in a claim construction exercise, construing the claim terms 'book' and 'printed information,' at this stage of the proceedings, with no context provided by discovery or a motion practice."  *Id*.

Other courts have rejected similar attempts to resolve patent validity issues improperly brought as a motion to dismiss.  In *Internet Media Corp. v. Hearst Newspapers, LLC*, 2011 WL 2559556 (D. Del. June 28, 2011), the District of Delaware rejected the same argument made by Amazon here: that the asserted claim "is a means-plus-function claim relating to the use of computers, thus requiring that the specification disclose an algorithm by which the computer performs the recited functions."  *Id*. at *2.  Amazon is in a worse position than the defendant in

*Internet Media*, because those claims at least used the term "means"—unlike the presently

asserted claims.  *See Internet Media*, 2011 WL 2559556 at *3.  The court in *Internet Media*

refused to engage in a claim construction and validity analysis without a fully developed record,

and the same result is appropriate here too.  *See also Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,

2010 WL 4698576, *4 (N.D. Ohio Nov. 12, 2010) ("The patent is presumed to be valid.  At this

time the Court is without the benefit of the prosecution history and the parties' arguments on

claim construction.  The record that the Court may consider on a 12(b)(6) motion—the complaint

and the attached patent—is insufficient for the Court to construe the patent claims contrary to

plaintiff's allegations of infringement and rule that it is invalid.").

   Amazon cites a string of cases attempting to justify its procedural maneuver.  D.E. 21-1

at 6.  Not one of the cases presents a question of indefiniteness or written description.  Instead,

these cases address the question of patentable subject matter—whether the type of invention

claimed in the patent is properly the subject of a patent as provided by 35 U.S.C. § 101.  Those

cases involve a very different analysis than what Amazon asks this Court to do.  For that reason,

the motion should be denied.

## VI.   LOCAL RULE 7.2(d) REQUEST FOR ORAL ARGUMENT.

   B.E. requests that the Court schedule oral argument on Amazon's motion to dismiss.  A

hearing will be helpful and necessary to address any questions the Court may have.  The validity

of B.E.'s patents is of paramount importance to B.E and the relief sought by Amazon is extreme.

When faced with the consequences presented by Amazon's motion, a final opportunity to be

heard is warranted.  For these reasons, B.E. requests oral argument.

## VII.   CONCLUSION

   For the reasons stated above, B.E. respectfully requests that the Court deny Amazon's

Motion to Dismiss.

Dated:  July 23, 2013                    Respectfully submitted,

_/s/Daniel Weinberg_____
Robert E. Freitas (CA Bar No. 80948)
Craig R. Kaufman (CA Bar No. 159458)
Daniel J. Weinberg (CA Bar No. 227159)
Qudus B. Olaniran (CA Bar No. 267838)
FREITAS TSENG & KAUFMAN LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA  94065
Telephone:  (650) 593-6300
Facsimile:  (650) 593-6301
    rfreitas@ftklaw.com
    ckaufman@ftklaw.com
    dweinberg@ftklaw.com
    qolaniran@ftklaw.com


Richard M. Carter (TN B.P.R. #7285)
Adam C. Simpson (TN B.P.R. #24705)
MARTIN, TATE, MORROW & MARSTON, P.C.
6410 Poplar Avenue, Suite 1000
Memphis, TN 38119-4839
Telephone:  (901) 522-9000
Facsimile:  (901) 527-3746
    rcarter@martintate.com
    asimpson@martintate.com


Attorneys for Plaintiff B.E. Technology, L.L.C.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 23, 2013, a true and correct copy of the foregoing was electronically filed with the United States District Court for the Western District of Tennessee and was served on counsel by the Court's electronic filing notification.

*/s/Daniel J. Weinberg*
Daniel J. Weinberg
