IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | No.: 2:12-cv-02767-JPM-tmp |
| vs. | | **JURY DEMAND** |
| AMAZON DIGITAL SERVICES, INC., | | |
| Defendant. | | |

**MEMORANDUM OF DEFENDANT AMAZON DIGITAL SERVICES, INC.**
**IN REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION TO DISMISS**

Glen G. Reid, Jr. (#8184)
greid@wyattfirm.com
Mark Vorder-Bruegge, Jr. (#06389)
mvorder-bruegge@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
The Renaissance Center
1715 Aaron Brenner Dr., Suite 800
Memphis, TN  38120-4367
(901) 537-1000

Counsel for Defendant
AMAZON DIGITAL SERVICES, INC.

*Of Counsel:*

J. David Hadden
dhadden@fenwick.com
Darren F. Donnelly
ddonnelly@fenwick.com
Saina S. Shamilov
sshamilov@fenwick.com
Ryan J. Marton
rmarton@fenwick.com
Clifford Webb
cwebb@fenwick.com
Justin Hulse
jhulse@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
(650) 988-8500

**TABLE OF CONTENTS**

INTRODUCTION ----------------------------------------------------------------------------------------1

ARGUMENT---------------------------------------------------------------------------------------------1

     I.       THE PATENT LAWS PROHIBT
           PURELY FUNCTIONAL CLAIMING--------------------------------------------------1

     II.     THE PURELY FUNCTIONAL LANGUAGE OF THE
           ASSERTED CLAIMS RENDER THEM INDEFINITE ----------------------------4

     III.    THE ASSERTED PATENTS DISCLOSE NO STRUCTURE
           TO PERFORM THE CLAIMED FUNCTIONS-------------------------------------7

     IV.    THE ASSERTED PATENTS
           VIOLATE THE POSSESSION RULE ----------------------------------------------9

CONCLUSION ----------------------------------------------------------------------------------- 10

**TABLE OF AUTHORITIES**

*Cases:*                                                                                                  *Page(s):*

*Affymetrix, Inc. v. Hyseq, Inc.*,
  132 F. Supp. 2d 1212 (N.D. Cal. 2001) ------------------------------------------------------------6

*Aloft Media, LLC v. Adobe Sys., Inc.*,
  570 F. Supp. 2d 887 (E.D. Tex. 2008) -------------------------------------------------------------6

*Altiris, Inc. v. Symantec Corp.*,
  318 F.3d 1363 (Fed. Cir. 2003) ------------------------------------------------------------------5

*Apple, Inc. v. Samsung Elecs. Co.*
  877 F. Supp. 2d 838 (N.D. Cal. 2012),
  *rev'd on other grounds* 695 F.3d 1370 (Fed. Cir. 2012) --------------------------------------7

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008) --------------------------------------------------------*passim*

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ------------------------------------------------------------------8

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012)--------------------------------------------------------------------9

*Fuller v. Yentzer*,
  94 U.S. 288 (1876)--------------------------------------------------------------------------------1

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996)--------------------------------------------------------------------2

*Halliburton Oil Well Cementing Co. v. Walker*,
  67 S. Ct. 6 (1946) --------------------------------------------------------------------------------2

*HTC Corp*. v. *IPCom GmbH & Co., KG*,
  667 F.3d 1270 (Fed. Cir. 2012) ------------------------------------------------------------------5

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*
  802 F.2d 1367 (Fed. Cir. 1986), *cert denied* 480 U.S. 947 (1987) ------------------------8

*Juxtacomm-Texas Software, LLC v. Axway, Inc.*,
  No. 6:10-cv-11, 2011 WL 6102057 (E.D. Tex. Dec. 7, 2011) ------------------------------6

*Kozam v. Phase Forward, Inc.*,
  No. 04-1787, 2005 U.S. Dist. Lexis 46850 (D. Md. Aug. 29, 2005)----------------------5–6

*LG Elecs., Inc. v. Quanta Computer, Inc.*,
  No. 07-cv-361, 2008 WL 4613054 (W.D. Wis. Mar. 4, 2008)------------------------------3

*Lizardtech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ------------------------------------------------------------------- 10

*Lockwood v. Am. Airlines, Inc.*
    107 F.3d 1565 (Fed. Cir. 1997) ------------------------------------------------------------------- 10

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ----------------------------------------------------------------------8

*Mass. Inst. of Tech. v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006) ------------------------------------------------------------------2

*Noah Sys. v. Intuit, Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) --------------------------------------------------------------8–9

*O'Reilly v. Morse*,
    56 U.S. 62 (1853) -----------------------------------------------------------------------------1, 9

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997) ------------------------------------------------------------------9

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
    172 F.3d 836 (Fed. Cir. 1999)--------------------------------------------------------------------4

*Soque Holdings (Berm.) Ltd. v. Keyscan, Inc.*,
    No. C 09-2651, 2010 WL 2292316 (N.D. Cal. June 7, 2010)-------------------------------3

*Stanacard, LLC v. Rebtel Networks, AB*,
    680 F. Supp. 2d 483 (S.D.N.Y. 2010)------------------------------------------------------------6

*Transperfect Global, Inc. v. MotionPoint Corp.*,
    2013 WL 2299621 (N.D. Cal. May 24, 2013)----------------------------------------------------3

*United Carbon v. Binney & Smith Co.*,
    317 U.S. 228 (1942) -------------------------------------------------------------------------------1

*Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.*,
    983 F.2d 1039 (Fed. Cir. 1993) ------------------------------------------------------------------2

*Widevine Techs., Inc. v. Verimatrix, Inc.*,
    No. 2-07-cv-321, 2009 WL 3734106 (E.D. Tex. Nov. 4, 2009) ---------------------------3

*Statutes and Rules:*

    35 U.S.C. § 112 ------------------------------------------------------------------------------*passim*

*Miscellaneous:*

*Ex Parte* Emigh,
No. 2012-005145, 2013 WL 1450915 (B.P.A.I. Mar. 12, 2013) --------------------------7

*Ex Parte* Erol,
No. 2011-001143, 2013 WL 1341107 (B.P.A.I. Mar. 11, 2013) --------------------------7

*Ex Parte* Rodriguez,
No. 2010-003169 (B.P.A.I. Oct. 1, 2009)--------------------------------------------------5

*Ex Parte* Roussi,
No. 2008-000693 (B.P.A.I. Apr. 7, 2011) -------------------------------------------------5

Supplementary Examination Guidelines for Determining
Compliance with 35 U.S.C. § 112 and for Treatment of
Related Issues in Patent Applications, 76 Fed. Reg. 7162 (Feb. 9, 2011) ------------- 6, 10

## INTRODUCTION

B.E. Technology, LLC ("B.E.") contends that it can own all ways for achieving a result, without disclosing a single solution, as long as it avoids the "magic words" "means for."  Not only is that not the law, it turns a hundred years of Supreme Court precedent on its head.  A patent that claims an invention only by its function, and thus seeks to appropriate from the public any future improvements and innovations that achieve the same result, was invalid before Congress enacted Section 112 paragraph 6 and remains so after.  A patentee may claim only his invention—his particular solution to achieve the desired result.  Section 112 paragraph 6 merely allows a patentee to specify that solution in the specification rather than in the claim itself.  Amazon's Motion to Dismiss challenged B.E. to tell the Court where it could find the required solution—an algorithm that implements the functions and achieves the results B.E. claims.  B.E. failed to identify any such solution either in its claims or specification.  B.E.'s patents are invalid on their face.  No amount of delay, skill in the art, or opinions of paid experts can salvage them.

## ARGUMENT

### I.    THE PATENT LAWS PROHIBT PURELY FUNCTIONAL CLAIMING.

For well over a century, it has been the law that a patent "will not be sustained if the claim is for a result."  *Fuller v. Yentzer*, 94 U.S. 288, 288 (1876).  A claim to a result is impermissible because it would grant to the patentee "the exclusive right to every improvement . . . [mattering] not by what process or machinery the result is accomplished."  *O'Reilly v. Morse,* 56 U.S. 62, 112–113 (1853).  A valid claim must describe the patentee's particular solution: "the *means or apparatus by which the result is obtained*."  *Fuller*, 94 U.S. at 288 (emphasis added).  In doing so, the claim must "clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise."  *United Carbon v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942).

Congress' passing of Section 112 paragraph 6 did not change the rule that prohibits claiming an invention by its function or result.[1]  Nor did it establish "means for" as "magic words" that invoke a higher standard of disclosure as B.E. suggests.  Prior to the passage of Section 112 paragraph 6, a claim that recited only results with no structure or acts for achieving those results was invalid.  *Halliburton Oil Well Cementing Co. v. Walker,* 67 S. Ct. 6, 10 (1946). Section 112 paragraph 6, consistent with the rule prohibiting functional claiming, "limited the breadth of such claim language by restricting its scope to the structure disclosed in the specification and equivalents thereof."  *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1582 (Fed. Cir. 1996).  The rule—that to be valid a claim must be to a particular structure, algorithm, or apparatus for achieving a result or performing a function, and not to the result or function itself—remained unchanged.  Section 112 paragraph 6 merely provides the claim drafter the option of disclosing that specific limiting structure, algorithm, or apparatus in the patent specification rather than the claim itself.  *Valmont Indus., Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039, 1042 (Fed. Cir. 1993).  At the end of the day, the result is the same.  A patentee cannot own all ways for achieving a result or performing a function, but only the inventor's particular solution.  That solution must be recited in the claim language itself or in the specification.

B.E. relies heavily on the rebuttable presumption that the use the words "means for" in a claim shows that the patentee intended to avail himself of the option provided by Section 112 paragraph 6 of reciting the required structure in the specification rather than the claim itself.  *See Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1353–54 (Fed. Cir. 2006).  But that reliance makes no sense in this case.  This is not a case where a claim recites its own structure such that it should not be limited to the structures disclosed in the specification.  Here, the claims are undeniably and completely structure-less.  Under these circumstances, it is irrelevant whether the

---

[1] In the 2011 amendments to the Patent Act, Congress relabeled Section 112 paragraph 6 as 112(f).  For sake of continuity with the case law, Section 112 paragraph 6 is used throughout.

applicant intended to invoke Section 112 paragraph 6 because the *sole* source of structure must come, if from anywhere, from the specification.  And yet here, the specification, too, is undeniably and completely structure-less.  Under these circumstances, the claims simply violate the basic prohibition against purely functional claims that the Supreme Court established over a hundred years ago and the Federal Circuit has repeatedly enforced.  Whether or not a claim uses the words "means for," if it recites no structure for performing the claimed function, Section 112 paragraph 6 applies and the claim is limited to the corresponding structure disclosed in the specification and equivalents.  *See Transperfect Global, Inc. v. MotionPoint Corp.*, 2013 WL 2299621, at *7 (N.D. Cal. May 24, 2013) (presumption against Section 112 paragraph 6 treatment rebutted with respect to the term "module for"); *Soque Holdings (Berm.) Ltd. v. Keyscan, Inc.*, No. C 09-2651, 2010 WL 2292316, at *12 (N.D. Cal. June 7, 2010) ("[I]f [the term] 'computer' is insufficient structure for a 'means' limitation, the naked term 'computer' cannot describe sufficient structure when recited directly in the claim limitation"(internal citations omitted)); *Widevine Techs., Inc. v. Verimatrix, Inc.*, No. 2-07-cv-321, 2009 WL 3734106, at *14 (E.D. Tex. Nov. 4, 2009) (finding "device" to be a means-plus-function limitation and concluding that because there was no algorithm for running the device the claim was indefinite); *LG Elecs., Inc. v. Quanta Computer, Inc.*, No. 07-cv-361, 2008 WL 4613054, at *2 (W.D. Wis. Mar. 4, 2008) (finding that "input unit receiving", "recording unit", and "reproducing unit" were means-plus-function claims and stating that "[i]f a patentee can avoid the limitations of § 112, ¶ 6, simply by taking the function and turning it into a noun, it is difficult to understand what purpose the section serves").  "The point of the requirement that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure is to avoid pure functional claiming." *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.,* 521 F.3d 1328, 1333 (Fed. Cir. 2008).  If no such structure is disclosed, the patent is invalid.

## II.     THE PURELY FUNCTIONAL LANGUAGE OF THE ASSERTED CLAIMS RENDER THEM INDEFINITE.

The asserted claims of U.S. Patent No. 6,771,290 (the "'290 patent") and U.S. Patent No. 6,141,010 (the "'010 patent") claim a computer program solely by the functions it performs. (*See* Motion at 9–17.)  For the '290 patent, these include:  "display a graphical user interface comprising an application window having a number of user-selectable items," and "in response to selection by a user of one of said items [] access the associated information resource over the network."  ('290 patent, claim 2, col. 39, l. 1–col. 40, l. 11.)  For the '010 patent, the claimed functions include:  "display a graphical user interface" and "select the information data to be displayed from among a larger amount of [] informational data."  ('010 patent, col. 21, l. 32–col. 22, l. 4.)  The claims do not define how any of this is done, namely what the *invention is*. They are therefore subject to Section 112 paragraph 6.

As Judge Rader explained in his concurrence in *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836 (Fed. Cir. 1999), if a "claim element recites only an underlying function without acts for performing it, then § 112, ¶ 6 applies even without express step-plus-function language."  *Id*. at 850.  "[T]he 'underlying function' of a claim element corresponds to *what* that element ultimately accomplishes in relationship to what the other elements of the claim and the claim as a whole accomplish.  'Acts' on the other hand, correspond to *how* the function is accomplished."  *Id*.  Judge Rader gave an example of such a purely functional element from the case at hand:  "[I]f this claim limitation had specified only the underlying function, namely 'adhering the mat to the foundation' without recital of specific acts for 'adhering,' 112, ¶ 6 would have governed, despite the lack of 'step for' language."  *Id*. at 851.  The same analysis applies here.  Each claim element describes only a result, *e.g.*, "display a graphical user interface" and "select information data to be displayed," without reciting any specific acts for achieving those results.

B.E. contends that because the claims recite generic computer hardware and programming,[2] they are tethered to a specific solution and not subject to Section 112 paragraph 6.  Not so.  The patents claim computer-implemented inventions.  Of course, the claimed computer-implemented functions are performed using computer hardware and programming.  To be valid, the B.E. patents must describe the specific programming, *i.e.*, the algorithm that the computer implements to perform the claimed functions.  *See Aristocrat*, 521 F.3d at 1334–35.

The Federal Circuit, district courts, the Board of Patent Appeals, and the United States Patent and Trademark Office have repeatedly held that recitations like those in B.E.'s patents, that do no more than express that a function is to be performed on standard computer hardware components or by "software," do not provide sufficient limiting structure to avoid Section 112 paragraph 6.  *See HTC Corp*. v. *IPCom GmbH & Co., KG,* 667 F.3d 1270, 1278 (Fed. Cir. 2012) (an algorithm, not hardware is the required structure); *Altiris, Inc. v. Symantec Corp*., 318 F.3d 1363, 1376 (Fed. Cir. 2003) ("'commands' (i.e., software) is so broad as to give little indication of the particular structure used here and is described only functionally, one must still look to the specification for an adequate understanding of the structure of that software"); *Ex Parte* Roussi, No. 2010-003169 (B.P.A.I. Apr. 7, 2011) (Exh. B to Amazon's Motion) at 5 ("software" in a claim denotes no particular structure and is simply a substitute for the word "means" in Section 112 paragraph 6); *Ex Parte* Rodriguez, No. 2008-000693 (B.P.A.I. Oct. 1, 2009) (Exh. C to Amazon's Motion) at 22 ("system builder" and similar software components do not denote structure and are subject to Section 112 paragraph 6); *Kozam v. Phase Forward, Inc.*, No. 04-

---

[2] On the '290 patent, B.E. notes that Claim 2 recites a "computer readable memory comprising:  a non-volatile data storage device" and "a program stored on said non-volatile memory device."  (Opp. at 10, citing '290 patent, col. 39:7–11.)  B.E. explains that the specification defines "program" as "[o]ne or more program modules," which is in turn defined as "[a] set of instructions stored in a file in computer-readable format, whether as object code or source code, and whether written in a complied language, in byte code (such as Java[TM]), or in a scripting or other interpreted language."  (*Id*. at 11, citing '290 patent, col. 4:55–59.)  On the '010 patent, B.E. points to the recitation of "program modules" which is similarly defined as "computer readable code."  (*Id*. at 11.)  None of these sections describe the required algorithm.

1787, 2005 U.S. Dist. Lexis 46850, at *18 (D. Md. Aug. 29, 2005) ("module" is a software component that denotes no structure required to avoid Section 112 paragraph 6); Supplementary Examination Guidelines for Determining Compliance with 35 U.S.C. 112 and for Treatment of Related Issues in Patent Applications, 76 Fed. Reg. 7162, 7171 (Feb. 9, 2011) (Exh. E to Amazon's Motion) ("module for" does not connote a structure).

The district court cases that B.E. cites are either distinguishable or misconstrue "structure" in a way that is inconsistent with the requirements of both the Federal Circuit and Board of Patent Appeals. In *Affymetrix, Inc. v. Hyseq, Inc.,* 132 F. Supp. 2d 1212, 1231 (N.D. Cal. 2001), the claims defined specific operations performed on data obtained from physical nucleic acids. *Id*. Even then, relying on the pre-*Aristocrat* precedent, the court considered the application of Section 112 paragraph 6 a "close question." *Id*. at 1131–32. *Stanacard, LLC v. Rebtel Networks, AB*, 680 F. Supp. 2d 483, 502 (S.D.N.Y. 2010), relies on the fact that in contrast to the use of module as a generic reference to software where it does not connote the required structure, "in the telecommunications context, there exists a well-understood structure associated with the term 'module.'" *Id*. at 500.

In *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, No. 6:10-cv-11, 2011 WL 6102057, at *11–*12 (E.D. Tex. Dec. 7, 2011), the court cited its decision in *Aloft Media, LLC v. Adobe Sys., Inc.*, 570 F. Supp. 2d 887, 897–98 (E.D. Tex. 2008), and held that "executable code" was structure because it "exists as a physical structure that is embodied on a physical medium such as a memory storage device." But as the Federal Circuit explained in *Aristocrat* and its progeny, the test for "structure" is not whether it can be physically embodied, but whether it specifies a means or apparatus for performing the claimed function. For a computer-implemented function, that requires an algorithm, not a bare reference to computer code, instructions or programming. *Aristocrat*, 521 F.3d at 1334 ("appropriate programming" does not denote required structure).[3]

---

[3] *Apple* similarly provides only superficial analysis in denying a motion for a preliminary

Today, applying the current Federal Circuit law, the Patent Office would find that the claims in the B.E. patents (and the claims at issue in the district court cases B.E. relies on) are purely functional and subject to section 112 paragraph 6.  The Patent Office guidelines for patent examiners and the decisions of its appellate judges hold that claims to software, modules, or a computer programmed to perform a claimed function, *i.e.*, claims to what a program can do, rather than how it does is, do not specify structure.  Such claims are subject to Section 112 paragraph 6 and invalid if the specification does not disclose an algorithm for performing the claimed function.  *Ex Parte* Eroll, No. 2011-001143, 2013 WL 1341107 (B.P.A.I. Mar. 11, 2013); *Ex Parte* Emigh, No. 2012-005145, 2013 WL 1450915 (B.P.A.I. Mar. 12, 2013); Supp. Exam. Guidelines, 76 Fed. Reg. at 7171.

### III.     THE ASSERTED PATENTS DISCLOSE NO STRUCTURE TO PERFORM THE CLAIMED FUNCTIONS.

Under Section 112 paragraph 6, the specifications of the asserted patents must disclose an algorithm for performing each of the claimed functions.  *Aristocrat*, 521 F.3d at 1333.  They do not.

As detailed in Amazon's Motion, and above, the asserted claims list several different functions and results but neither they, nor the specifications, disclose any algorithms that one could program a computer to perform to achieve those functions and results.  (Motion at 11–17.) B.E.'s Opposition identifies no algorithms for performing any of the claimed functions.  Indeed, B.E. wholly ignores Amazon's arguments concerning the '010 patent and does not even attempt to identify a single algorithm for performing even one of the claimed functions.  (Opp. at 14–16.)

For the '290 patent, B.E. does not address the specific functions required by the claim and does not attempt to identify specific algorithms for performing any of the claimed functions.

---

injunction and fails to address the post *Aristocra*t case law, instead relying on outdated district court opinions.  *Apple, Inc. v. Samsung Elecs. Co.* 877 F. Supp. 2d 838, 895 (N.D. Cal. 2012), *rev'd on other grounds* 695 F.3d 1370 (Fed. Cir. 2012).

Instead B.E. addresses only the claim as a whole, asserting that "[c]laim 2 of the '290 patent and specification include the very steps that the software follows to perform the claimed functions." (Opp. at 14.)   B.E. then quotes the claim and a section of the specification that describes the results of the claimed software in the same functional language as the claim, *e.g.*, " . . . when the user runs the first program module, it identifies the user and connects to the server to access the user's profile and library . . . ." *Id.*  Like the claim, this "describes an outcome, not a means for achieving that outcome". *Aristocrat*, 521 F.3d at 1334.

For other claimed functions including "display[ing] a graphical user interface," B.E. asserts that it is "not the invention" and no algorithm need be disclosed because ways to perform the function were known in the art, citing *Hybritech, Inc. v. Monoclonal Antibodies, Inc*. 802 F.2d 1367, 1384 (Fed. Cir. 1986), *cert denied* 480 U.S. 947 (1987).  First, the claims define the invention. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995).  B.E. cannot "redefine" its invention after the fact for purposes of its Opposition.   Second, the quotation from *Hybritech* regards the enablement requirement.  It is true that to meet the enablement requirement "a patent need not teach, and preferably omits what is well known in the art."  That is not the law where a patentee claims an invention by its result, as B.E. did here.  To the contrary, "[a] patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function.  To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009); *see also Noah Sys. v. Intuit, Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("That various methods might exist to perform a function is 'precisely why' the disclosure of specific programming is required") (citation omitted).

The rest of what B.E. points to as purported structure for performing the claimed functions was addressed in detail in Amazon's Motion and is insufficient as a matter of law.

(Motion at 11–12.)  Specifically, B.E. points to language describing figure 5, and explaining that the interface can be programmed using a "suitable programming language."  (Opp. at 15–16.) But as Amazon already explained, figure 5 (and the language discussing it) discloses nothing but a functional black box with no explanation of how the interface is actually created and displayed. *ePlus,Inc. v. Lawson Software, Inc.,* 700 F.3d 509, 518–19 (Fed. Cir. 2012).  Likewise, that the interface *could* be programmed using "ActiveX™, Java™, or any other suitable programming language" just foists the burden of invention off on another of ordinary skill in the art.  That too does not suffice.  *Aristocrat*, 521 F.3d at 1334 ("appropriate programming" not sufficient).

As B.E. has failed to identify any algorithm that performs the functions recited in the claims of the '290 patent—and has failed to even address the '010 patent—the claims are indefinite and invalid.  Making these determinations does not require expert testimony as B.E. suggests.  (Opp. at 14.)  Where a patent on its face fails to disclose *any* algorithm to perform the claimed function, it is invalid as a matter of law, and no expert can salvage it.  *See, e.g.*, *Noah Sys.*, 675 F.3d at 1312 ("[w]hile it is undisputed that the question of whether a claim is indefinite is based on how the claim limitation would be understood by one of skill in the art, 'the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification'") (citation omitted); *Aristocrat*, 521 F.3d at 1337 ("[i]t is certainly true that the sufficiency of the disclosure of algorithmic structure must be judged in light of what one of ordinary skill in the art would understand the disclosure to impart . . . That principal, however, has no application here because . . . there was no algorithm at all disclosed in the specification").

## IV.    THE ASSERTED PATENTS VIOLATE THE POSSESSION RULE.

A patentee can claim only what he invents and possesses and "if he claims more his patent is void."  *O'Reilly,* 56 U.S. at 121.  This is because "[t]he description requirement of the patent statute requires a description of an *invention*, not an indication of a *result* that one might achieve if one made that invention."  *Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d

1559, 1568 (Fed. Cir. 1997) (emphasis added).

For computer-implemented inventions, like those claimed here, the possession rule requires "disclosure of the computer algorithm in sufficient detail to demonstrate to one of ordinary skill in the art that the inventor possessed the invention including how to program the disclosed computer to perform the claimed function." Supp. Exam. Guidelines, 76 Fed. Reg. at 7171. As explained above, B.E. fails to identify *any* algorithms for achieving the results claimed, let alone all possible algorithms. As the Federal Circuit held in *Lizardtech*, if a patent claims all solutions, disclosure of only a single algorithm would not be enough. *Lizardtech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005). B.E. has not even managed that here.

Instead, B.E. repeatedly relies on its assertion that one skilled in the art would be able to create a computer program to perform the claimed function. As the matter of law, the patentee cannot rely on skill in the art to show possession of the claimed invention. *Lockwood v. Am. Airlines, Inc.* 107 F.3d 1565, 1572 (Fed. Cir. 1997); *Lizardtech*, 424 F.3d at 1345–46. The invention that must be disclosed is the inventor's own solution—here, it must be the inventor's specific algorithms for performing the claimed functions. The written description requirement is "not a question of whether one skilled in the art might be able to construct patentee's device from the teachings of the disclosure . . . Rather, it is a question of whether the application necessarily discloses that particular device." *Lockwood,* 107 F.3d at 1572 (citation omitted). There is no question that the asserted patents do not. As such, they are invalid for failing to show possession of the claimed invention.

## CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court grant its Motion to Dismiss the amended complaint in its entirety with prejudice.

August 9, 2013                              Respectfully submitted,


                                           *s/ Mark Vorder-Bruegge, Jr.*
                                           Mark Vorder-Bruegge, Jr. (#06389)
                                           mvorder-bruegge@wyattfirm.com
                                           Glen G. Reid, Jr. (#8184)
                                           greid@wyattfirm.com
                                           WYATT, TARRANT & COMBS, LLP
                                           1715 Aaron Brenner Dr., Suite 800
                                           Memphis, TN  38120-4367
                                           901.537.1000


*Of Counsel:*                              Counsel for Defendant
                                           AMAZON DIGITAL SERVICES, INC.

J. David Hadden
dhadden@fenwick.com
Darren F. Donnelly
ddonnelly@fenwick.com
Saina S. Shamilov
sshamilov@fenwick.com
Ryan J. Marton
rmarton@fenwick.com
Clifford Webb
cwebb@fenwick.com
Justin Hulse
jhulse@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
650-988-8500

- 11 -

## CERTIFICATE OF SERVICE

The foregoing document was filed under the Court's CM/ECF system, automatically effecting service on counsel of record for all other parties who have appeared in this action on the date of such service.

*s/ Mark Vorder-Bruegge, Jr.*
Mark Vorder-Bruegge, Jr.
